Mr. Chief Justice, and may it please the Court, the initial goal of this appeal was to reverse a single Board of Immigration Appeals decision that changed the removability analysis for drug paraphernalia convictions. It abandoned the long-standing practice that Congress had ratified. We wanted to reinstate the rule that still applies in all other drug deportation decisions, which looks at the facts that must be established by a conviction and at the record of conviction when that's appropriate under this Court's precedence in Moncrief and Descamp. That methodology has led to tens of thousands of drug deportations each year, but not for someone convicted of possessing a sock. Now the government has argued that this wrongheaded BIA paraphernalia decision should be expanded to all drug convictions. The government wants any drug conviction to be a deportable offense, even if it's clearly for a non-Federal drug. This Court should reject the government's position and the BIA's position and adhere to the time-tested approach that the statute to the statute that Congress has ratified. Alito, could we begin by looking at the text of the statute? What does the phrase, relating to a controlled substance, et cetera, modify? Relating to sort of the function of connecting the very broad range of offenses that Congress wants to make deportable to the list of substances that the – that Congress has spelled out. Alito, let's say we were – let's say we're back in high school and we have to diagram this sentence. Yes. We could start out that way and maybe we'll get beyond it. But let's start out that way. We have a phrase here, relating to a controlled substance. What does it modify? It has to modify a noun. What noun does it modify? Relating to would modify – would modify law or regulation.  We've lost the case. But if you diagram the sentence, though, everything in that whole phrase, convicted of a violation of a law or regulation relating to a controlled substance under Section 802, all modifies alien. The whole phrase has to be taken together and read together to modify what alien is deportable. And the pure grammar does – is not sufficient to determine what Congress meant when it enacted that text. If you – if you – I think Justice Alito is right. If you're claiming that, then you're accepting that there's ambiguity and you have an uphill battle to fight. Well, again, given the text and the context of this statute and the history of its application over decades and decades, there's – That's an argument that they're arbitrary and capricious. Well, it's also part of the analysis that goes into determining the Chevron, a question that you allude to, Justice Sotomayor, because Chevron should be approached after applying the usual principles of statutory interpretation. And that's what Chevron says. Wait, wait. How does it – how does it – I've missed this. I'm missing something. Why do you lose the case? Well, I mean, I assumed that – I assumed, as you said, what are you fighting here? I assumed, as you said, that the words relating to a controlled substance as defined in Section 102 concern any law or regulation. And you deny that? Well, that's only part of the analysis. I understand that's not – I thought that was not your argument to deny that. Your argument was that this – where you have a State law or a foreign law or something, and it does relate to the regulation of a controlled substance, but a lot of other things as well, that that falls out soft. Yes. And particularly in a sentence that has such a focus on the word convicted. I suppose that it relates to the State law. There are 36 802 substances, and here it has – it relates to 37. That's case one. Case two, it relates to 4,037. And both of these statutes contain the 36 that are in Section 802. One contains 4,000 more, and one contains one more. How am I supposed to analyze those two statutes? This goes to the application of the categorical approach and the modified categorical approach. If the identity of the substance is an element of the offense, then you use the modified categorical approach. You look at the record of conviction and you determine what substance is involved. And if it's a substance on the 802 list, then the person is deportable. And as the analysis that we've provided in the appendix to our reply brief shows, many, many, many State statutes are divisible in exactly that manner. Your argument is it relates to 4,036, and 36 are 802s. And so what we do is we read the statute. It doesn't tell us what this conviction is about. We look to the documents in the modified categorical. If it lists one of the 36, that's the end of it. Goodbye, he's deported. If it doesn't, we don't know. If we don't know, he wins. Yes, that's exactly right. Alito, that might be sensible, but I really do need to start with the text of the statute and understand what you make of the text of the statute. So if relating to modifies law, do you deny that the law, the Kansas law in question here, relates to a controlled substance, or do you read relating to a controlled substance to mean relating solely to controlled substances as defined by Federal law? The Kansas statute in this instance relates to a Federally controlled substance sometimes. It relates to, and that's why, that's where it's at. The law relates to what it relates to. It doesn't relate to something at one time and something at another time. What does the law relate to? The law relates to a long list of drugs. The great majority of them are on the Federal list. A few of them are not on the Federal list. Now, if it said relating solely to drugs on the Federal list, you'd have an argument. I just need to know what you want us to do with the text of the statute. When it's in the context that it's in, in this sentence, again, with the focus on convicted, a law that Congress – I'm sorry, a word that Congress has used in our immigration statutes for decades, with this particular meaning, convicted is the statutory hook, as the Court said in Moncrieff, for the categorical approach, and it's not a The State's list was identical to the Federal list. We still don't know which particular drug we know, but it's not part of the charge. So Kansas has an identical list. If it's identical or narrower, the person is deportable. And there are many statutes that want that. And if it has one that's different, not deportable? No. If the stat – if the substance is an element and you use the modified categorical approach, then you can determine what substance is at issue. Well, we don't know what substance. In this case, we don't. If you don't know what substance. It's not charged, so it's not an element. That's – so it's not in the record of conviction. It doesn't seem to make a whole lot of sense to say deportable if the lists are identical, but if Kansas has one more on the list, not deportable. This Court has – well, this Court has applied the categorical approach in just that way, as have many of the courts of appeals. It is a way of determining what is the – what the person was convicted of, because you look at the facts that are – that must be found for the conviction. And it's a mode of analysis that's been used in the immigration laws for going  Scalia, but it doesn't get you around the question that Justice Alito asked, what is the law? May I make a suggestion? Certainly, Justice Scalia. Perhaps the law – if you ask somebody, what law did Malooly violate here, it would be perfectly natural to respond by reciting one of the elements of the law that he violated. He was convicted of possessing drug paraphernalia to store a controlled substance. And so also with any other violation of a law that names a number of controlled substances. If you ask what law did you violate, he would say I violated the law that made it unlawful to have marijuana or that it made it unlawful to have cocaine. It seems to me you've got to – you have to divide the word law and the word regulation up into the component elements of the law or regulation before you can reach the result that you would like to reach. Yes, and that's – Is that a good suggestion? Yes, Your Honor. And in our view, that's precisely the work that's done in the statute by the word regulation, by the word conviction, and its association with the categorical approach. That's the framework. That is one way of looking at it, but might I suggest that you gave in a little bit too fast, Justice Alito, that the phrase relating to a controlled substance has to modify law? It's very true that usually in grammar a phrase like that would modify the last noun, which in this case is law. There is another noun in this sentence which is violation. And can I suggest to you that maybe if you read this entire provision, it's pretty clearly talking about violation, because here is the way it reads. It's a – convicted of a violation of any law relating to a controlled substance other than a marijuana offense, other than a marijuana offense. Now, it just doesn't make any sense to say a law relating to a controlled substance other than a marijuana offense. What makes sense is to say a violation of law other than a marijuana offense. So this last phrase, other than a marijuana offense, which is an exception. And so you say what's an exception to? The offense is an exception to the violation. So the violation is the key word doing the work in this phrase. Yes. And law really has to be in the sentence to support States, United States, and foreign country, otherwise that, which is an important concept in the law, couldn't be sensibly  Alito, it certainly is possible for relating to, to modify violation. It's an awkward way of phrasing it, but that is possible. It's a noun. It could modify that. So what would the violation be? Is the violation then is not – the violation, I take it, then would be the alien's conduct, what the alien did. I think that's right. I think that's right. Is that right? I believe so. So what then happens if the alien's conduct relates to a Federally controlled substance, but the conviction is under a law that does not relate to a Federally controlled substance? What if the alien, for example, is convicted of burglarizing a house for the purpose of stealing drugs that are in the house? The law doesn't relate to a controlled substance, but the conduct does relate to a controlled substance. Right. And the deportability rises and falls on what the person is convicted of. Yes. It's not the conduct. I think you misspoke when you said that. It's the violation. It's the crime of conviction. I certainly didn't mean to say conduct, if I did. And no, conviction is the key concept here, and it always has been the key concept as we've applied this set of laws to our immigration to noncitizens. A few moments ago, I understood you to concede when Justice Ginsburg asked the question that if there is an exact parallel between the State law and the Federal law, your client would be deportable. Yes. So the fact that there's a drug paraphernalia conviction has nothing to do with the issue before us? Well, the drug paraphernalia statute under which he's convicted requires that the conduct be associated with a Kansas controlled substance. So if the Kansas controlled substance list is the same as the Section 802 list, then the conviction satisfies the statute. So long as the drug offense is related to, then the paraphernalia offense is related to? So it doesn't make any difference that we're dealing with paraphernalia? I think I understand your question, and I think that the answer to your question is yes, because the paraphernalia statute specifically incorporates the controlled substance schedule from Kansas. So you don't get any help by what seems to be the case that this SOC would not count as drug paraphernalia if we were dealing with a Federal prosecution? You are absolutely right that it would not. Possession of paraphernalia is not a Federal offense. One cannot be prosecuted Federally for possessing drug paraphernalia. The question I wanted to ask, is the SOC considered drug paraphernalia under Federal law? It would not be, because the Federal statute says that – I don't have the language in my head, but the concept is that to be paraphernalia, its usual purpose has to be to facilitate drug sales or drug use or one of those things that paraphernalia does. And the Kansas definition is far broader than that. It's really any object that can be used to store or facilitate storage of, or store of, or facilitate use of a controlled substance.   Roberts. Roberts. Well, that's why I would have thought your answers to me would have been different, because you would want to say that the paraphernalia is an additional hurdle. Just because the drugs relate to the Federal drugs doesn't mean that you can say the paraphernalia does, because it covers all sorts of things that the Federal law doesn't. That's correct. It does cover many things that the Federal law doesn't. And it would be inappropriate, and it – that shows why this isn't the conduct that Congress was trying to address when it goes to the State. What if the – what if someone was convicted of possession of a pipe that is very well designed to smoke crack, but maybe conceivably could be used to smoke a little bit of tobacco? So maybe it's lawfully sold in some places because it could have a legitimate use. What would happen then? The question is what the person is convicted of. And he's convicted of possessing a crack pipe. If he's convicted of possessing a crack pipe. Is it necessary to show that there was crack in the pipe? Not under the Kansas statute. The Kansas statute just says that the object has to have been used or is intended to be used. Well, in your view, in order to make this count as a deportable offense, would it be necessary to show that there actually was crack in the pipe or that he actually used the pipe to smoke crack? Not the way we read the statute. But the conviction would have to involve a controlled substance. And if it's both tobacco and crack, the crack would have to be in the conviction. It has to involve the control, a Federally controlled substance. It has to involve a Federally controlled section 802 controlled substance,  Sotomayor, that's the linchpin. Yes. Well, crack is a Federally controlled substance. Yes. So I didn't understand the answer to your question. Would it be the crack pipe itself be enough or do you have to show actual crack? The crack pipe itself would be enough as long as there was proof or pleading to its use with at some point or its intention to be used with crack. That's a question. Well, well, well, well, wait. Only using the modified approach so that you would show it was intended to be used with crack, but on its face, if the Kansas statute still covers crack, yes, but a lot of other stuff, that alone would not support the conviction, would it? You would have to go to look to see what he was actually convicted of. Right. And our analysis, again, as I pointed to that lengthy appendix, is that the great majority of State statutes that cover the primary drug activities, manufacturing, sale, and possession, are divisible statutes and would be subject to the modified categorical approach. There are also many statutes that fit within the Federal 802 schedule under the categorical approach. There are State statutes that outlaw marijuana possession, that outlaw narcotic possession in ways that the statute just fits within the categorical approach, but the modified categorical approach is what may apply most of the time and it would – and really what we're doing here is I'm making this argument about the modified categorical approach, that our perspective would cut back on the number of people who could be deported for drug violations, and that's just not so. In fact, the Board of Immigration Appeals has been applying the law the way we say it should be applied for all non-paraphernalia offenses for decades, and it always is deporting, if you look at their own statistics, 30,000, 35,000 people a year for drug offenses. So it's not – the approach that we are advocating here that has been used for many years is not something that brings a halt to drug deportations. Drug deportations have been happening all along in – under the approach that we suggest. The government is really reading the law here to encompass all drug convictions, and it would be odd for that – for that argument to be correct, given that the statute says – makes this reference to Section 802, which is only federally controlled substances. You can't really reconcile that with the Section 802 reference. The government's position reads that out of the statute. The last – well, Congress has always – well, the categorical approach has applied for decades. The academic history takes it back to 1913, the first application of the doctrine. And Congress has been aware of that approach to the law, that approach to applying the law, has continued to pass statutes that use the word convicted, which is what embodies the categorical approach. And under the application of that principle that we are advocating here, Congress has amended the statute numerous times since it was put into the form it's in now, which is 1986, in a way that signifies its ratification of the approach that we're suggesting. Congress has not only been aware of the categorical approach, but also has, since the outset of the statute, controlled the list of drugs that are deportable. And currently, the way the statute is set up is – Scalia, I don't know why you're wasting your argument on that. We all agree with the categorical approach. The question is categorical to what? That's the issue. Well, and just to differentiate what we're saying from the government's position, which they also argue is a species of the categorical approach, we're talking about the categorical approach as it has traditionally been applied, where the elements of the conviction have to be compared to the generic Federal statute or to the statute of removal. When you say categorical approach, you mean the modified categorical approach, do you not? In a jurisdiction like Kansas or in any foreign jurisdiction that has a list of controlled substances that is a little bit broader than the Federal list, lists at least one or two that are broader than the Federal list, the pure categorical approach would never result in removal, am I right? In a removable offense. That's not correct. How would it? You'd say your person was convicted of selling a drug that is categorized, that is on a list or part of a list. That would be the element of the offense. But you would have to look beyond that to see which particular drug. That's the modified approach, is it not? Many States, including Kansas, have some statutes that don't invoke their entire schedule, for example, a marijuana possession statute that stands alone. That would be, that would fit under the categorical approach. Scalia, that's not his hypothetical. His hypothetical is a statute that includes one drug which is not on the Federal list. I misunderstood. Then under the categorical approach, that person would not be deportable. As we've shown, we think that most of those statutes would be analyzable under the modified categorical approach. Yes. Congress always has retained control over the substances that can lead to deportability. Under the current statute, it's opened up the conduct, the kinds of crimes that are deportable, allowing those to be crimes defined by the States, defined by the United States or defined by foreign countries, as long as they relate to the Federal crimes. And that is, that is shown by, these substances that are on the State schedules that are not on the Federal schedules could be on the Federal schedules if the Attorney General determined that they were serious enough drugs, that they were dangerous enough drugs. Some of the substances on the Kansas schedule, TFMPP, which is a hallucinogen, for example, have been on the Federal schedule but have been removed from the Federal schedule. So these indicate that there are substances of the sort that the government has not thought to be significant enough to even involve in Federal crimes. Sotomayor, just to move you along, if we agree, do you agree with the government that if we find the government's distinction between drug trade offenses, like the paraphernalia statute, and drug possession and distribution offenses unreasonable, do we remand to the Board? And if not, why not? And if you want to save it and answer on rebuttal, you can. Well, I think that the BIA has had its chance to state its position, and it has carved out that this drug trade exception is really a drug paraphernalia exception. Nothing fits within drug trade except for drug paraphernalia. The things we ordinarily think of as drug trade, like selling and trafficking, are not part of the drug trade exception. So the BIA has had its chance to construe the statute. And I'd like to reserve the remainder of my time. Thank you, counsel. Ms. Kovner. Mr. Chief Justice, and may it please the Court. There are two independently sufficient reasons why Petitioner's drug paraphernalia conviction permitted his removal. The first is that Federal law allows the removal of an alien convicted of violating a law relating to controlled substances. And State drug laws that cover hundreds of Federally controlled substances, in addition to some additional drugs, are laws that relate to Federally controlled substances. What if the State law covers controlled substances entirely different from the Federal law? Maybe they figure the Feds can take care of that list, we're just going to have a law with these. Does the State law relate to controlled substances? We would say it does not relate to controlled substances as defined in Section 802, which is the full statutory phrase. I don't understand that. You're doing the flip of Justice Ginsburg. So how many drugs on that list have to relate to 802 drugs for it to relate generally? We would concede along the lines of Justice Breyer's hypothetical that if you have a State law that controls 6,000 State controlled substances and one Federally controlled substance. How about half and half? Wait, what was the answer? If you have that. That law has the kind of tenuous relationship to Federally controlled drugs that the Court has said is not a relating to relationship. It doesn't say more than tenuously related. It says related to. Where are you smuggling in the tenuously? I'm taking it from this Court's cases. The Court has said relating to is extremely broad, but the Court has said there is some outer limit at which even if there is a literal relating to relationship. Well, that's how you get the drug paraphernalia, meaning, as Justice Kagan said, the drug paraphernalia comes in only because it relates to drug possession and distribution. That's right. Of the controlled substance under 801 or 802, whatever it is. That's right. We think that crimes involving drug paraphernalia are crimes that relate to controlled substances, and there are two reasons. You keep leaving out the 802. There are other sections of the Criminal Act that specifically say any conviction and it could be of any law, right? But this one doesn't say it that way. We think that, as Your Honor correctly notes, these are laws that relate to controlled substances as defined in section 802. And there are two reasons why. The first is that a statute that relates, a statute that forbids possession of paraphernalia that's connected to hundreds of federally controlled drugs, and here are nine additional substances, relates to federally controlled drugs. And the second is that as the Board has defined. Sotomayor Now, answer. Yes. How many of the laws, how many of the controlled substances have to be on the State list? Is 50-50 enough? 75-25? Six out of? I mean, what's the how many have to be on the list? We think that all the State laws that currently exist are laws that relate to federally controlled substances. And all of those laws. But that's not true of foreign laws, and this relates to foreign laws. I mean, there are some foreign countries that list many of the controlled substances, the U.S. does, but adds alcohol. Now, some people may think alcohol is a controlled substance, but it's not on the 802 list. Your Honor, we acknowledge there might be a case involving a foreign law or involving if in the future a State decided to take a very different approach, where you would have a literal relating-to relationship, but there would be a question of whether the law was so far beyond what existed at the time and what Congress could have imagined that it no longer relates to. But Petitioner's reading of relating-to isn't a permissible reading of relating- to. Scalia, do you think that if we apply a modified categorical approach and focus in on the conviction here, which was for a SOC, do you think a SOC is more than tenuously related to these Federal drugs? Yes, Your Honor, and here's why. These drug paraphernalia statutes modified on the Model Act, like Kansas's, are quite broad. We acknowledge. Right. That's why I'm proposing modified categorical approach. He was convicted of having a SOC, and you think that's more than tenuously related to these Federal drugs? We do because he wasn't exactly convicted of having a SOC. He was convicted of using an innocent item as a tool for the storage of drugs, and that's true of every drug paraphernalia conviction. Typically, drug paraphernalia involves objects that have an innocent use and objects that have an illicit use, but essentially every State has decided that in order to impede the drug trade and drug use, you need to prohibit those. I do want to hear what you said second. You said two reasons. You got your first out, and I'd like to hear your second. Yes. You said the second, didn't you? There is an additional reason, Your Honor, which is the BIA has reasoned in a conclusion that's entitled to Chevron deference that paraphernalia statutes are statutes that attack the drug trade in general. Now, I got the second one. Now, I do have one question, and it's right related to Justice Scalia's. And it seems to me that that, what he said, if I understand it correctly, makes this not too difficult a case, but you won't like it. That we have long — yes, it modifies law, but we have long, if we go back to the seminal case of Taylor, there is a Massachusetts statute. It forbids a burglary of a boat, a car, and a house. So what Justice Blackmun said, I think it was he who wrote it, go back to the documents to see whether he was charged with burglary of a house, a boat, or a car. So we have a tradition of looking back to the charging documents and maybe a couple of others to see what part of the statute. Now, this statute is a statute that first penalizes many, many things packaging to — packaging is relevant here. What kind of packaging? Packaging of drugs. Okay? What drugs? It doesn't say drugs. It says controlled substance, so you have to cross-reference. Then we look to cross-reference and it says controlled substance means a substance included on State Schedule 1, 2, 3, 4, 5 or Part B. So it incorporates that. So then we go look to those documents, and those documents will have a long list. And we look to see here which of the documents on the list which is incorporated into the statute is he charged of packaging. Very simple. Happens, it's not that simple to do, but that is absolutely traditional given our holdings on how to apply the categorical, modified categorical system. So why not just do that right here? Solves every problem that's raised. Let me give two responses. One is a textual one, and the second, I think, goes to your practical point, because I really think it's important that it won't actually solve the practical problems here. As to the textual point, when Your Honor talks about Taylor, I think it's important to note how different the statute here is, which is unlike many provisions that talk about being deportable or suffering some other consequence for being convicted of a crime relating to something, here it's talking about being convicted of violating a law relating to something. But I really want to address this practical point, because, Your Honor, we think the result under Petitioner's view is going to be a real patchwork in terms of what conduct is removable depending on what State you are in. And the reason why, Justice Breyer, is that it's not going to be possible to apply the modified categorical approach to many drug statutes. It will sometimes and it won't other times, and let me explain why. For instance, here, under this statute it appears, and under paraphernalia statutes generally, there will typically not be a requirement of a finding or an admission of what particular drug you intended to use the item with. Kagan. Kagan. And I understand the way the law works, right, Ms. Kovner. That is true of paraphernalia drugs, that they're indivisible with respect to the controlled substance. It's not true with respect to most possession statutes or distribution statutes or so forth. And the reason that there is that distinction is because paraphernalia offenses are generally extremely minor offenses. They're not felonies. They're just, as in this case, they're misdemeanors that are meant to catch leftover things that, you know, prosecutors plead to when they don't really want to charge a more serious offense. And so it makes good sense that all these paraphernalia offenses would be counted out by this approach. You're counting out a bunch of trivial, I mean, you know, trivial, I don't want to say trivial, minor offenses. Kovner. Your Honor, I have two points about that. The first is that we don't think it's correct that this is going to be just paraphernalia offenses and not any possession or distribution offenses. And if you look at the cases that are cited on page 31 of our brief, they illustrate that, which is that conviction records are not necessarily specifying the drug that's involved in a particular offense. And so you're going to have a really haphazard system. Sotomayor, even your brief admits that the BIA is applying a different standard to possession and distribution offenses. It's applying the 802 specification. And it's trying to draw a difference. I still don't understand how it does it. But my point is that you're proving it's a – you're living by the 802 distinction with distribution and possession. Your Honor, I'm not sure that that's true. We think that the BIA's precedent at this point is unclear. The BIA, it's not – Sotomayor, what you're hoping for is that they'll change that one, too. But let's answer what's happened up until now. Yes. As to what's happened up until now, I don't think that's clear. My understanding is that the BIA will generally try to seek removal of people who've been convicted. Does they have discretion? If they're not automatically removable and they look at the underlying papers and decide it's a more serious crime than the strict removability statute, they let the person – they remove this person anyway. I don't think that's correct, Your Honor. What we're seeking here is the authority to seek removal for persons who've committed these offenses. If – in this case, for instance, if we were to not prevail, we would lack the authority, the government would lack the authority to remove Petitioner, no matter how serious it regarded his underlying conduct. A couple of minutes ago, you said that a sock, when it's used in connection with the drug activity, is sufficiently related to the Federal Controlled Substances Law. What about a gun? Those are often used in connection with drug activity. So is a law concerning gun possession or gun control or whatever a State law that relates to the Federal Controlled Substances Law? Your Honor, I think this would be a difficult question on either of our sides, which is to say, for both parties, there would be some set of statutes that are related to – that have some connection to drugs indirectly, and there would be a question of whether those statutes count. We don't think that a statute that addresses guns, merely because guns and drugs have some, you know, relationship to them. But if a statute addresses socks, it does. Well, here, Your Honor, it's not a statute addressing socks. It's a statute addressing socks when used in connection with drug activity. I'm talking about guns when used in connection with drug activity. Oh, Your Honor, a statute like 924C that applies to guns when used in connection with drug activity, we think would be a law that relates to controlled substances. We think statutes that regulate conduct that leads to the proliferation of drugs or the use of drugs is a core statute relating to the drug trade. Under your definition, under your understanding of this, what practical work is done by the phrase, as defined in Section 802 of Title 21? You said a couple of minutes ago, and I had assumed this to be true, that under the laws of all the States, the great majority of controlled substances are on the Federal list, and there are, in some instances, are a few additional ones. And you said that all of those laws would be covered. If that's the case, then I don't see what was achieved by putting the reference to the Federal list in the statute. They might have just said relating to a controlled substance. Your Honor, we think that this parenthetical clarifies the meaning of controlled substance. The thing that the statute has to relate to are the substances as defined in Federal law. There is another colloquial meaning of controlled substance, if you look in, like, Black's Law Dictionary, which is just any regulated drug. And that would apply to, for instance, prescription drugs that aren't controlled under the controlled substances. Scalia, I mean, there are some States that ban pate, for example, right? You wouldn't want that swept into this statute, would you? That would not be a statute under the law of a State relating to a controlled substance as defined in Section 802, because it wouldn't be regulated under a State's drug statutes that also include the Section 802 substances. And if I could just explain why we think that Congress enacted a law that applies to any person who violates a State law relating to controlled substances. When Congress enacted the provision of the INA that's currently in effect, it acted against the backdrop of State laws that were designed to tightly coordinate with Federal laws and that were designed to produce the kind of regime that they have, in fact, produced, where any overlap between the State and Federal schedules is the overwhelming proportion of the drugs that are controlled on State schedules. And, Justice Breyer, if the Court were to hold that those laws aren't laws relating to controlled substances, whether an alien is removable under those State laws designed to parallel the Federal laws is going to depend on what kinds of findings the State requires to be made in connection with those possession or distribution of drugs. Breyer, it wouldn't make that law a nullity. Indeed, the person would be deportable, provided when you went through the State charge, the State charge was you violated the packaging for use statute, packaging a controlled substance, in respect to item 13 under Schedule 2, which they should say anyway, and that happens to be heroin. And if, in fact, when you went through Schedule 3, Part 4a, the word there was alcohol, then it wouldn't. Now, that's simple. And if the State's charging practice is such that they don't tell you, that's equivalent to a State charging practice that in Massachusetts didn't tell you whether you were accused of burglary of a boat, of a house, or of a car. And if the State wants to do that, I guess it might be up to them if you get a guilty plea and then you could not deport the person. But Congress didn't want that result, Justice Breyer. Well, I wanted a lot of people, but they can't control the State charging practices, and the States are likely, for reasons of information, to put in the charge the whole thing, including the correct reference on the schedule. So is that the only thing you find wrong with it? And I agree with you that that is a slight problem, that we'll read back the conviction of 4 years ago in Missouri and we will see that it doesn't tell us what item on the schedule. That's the problem that you see. Any other? Your Honor, that's a significant practical problem that's going to introduce widespread variation in the deportability of people who have committed crimes involving Federally controlled substances. But as Justice Sotomayor suggested, it's a significant practical problem that's implicated in the current practice of the BIA. And I don't think that's correct. We think the current BIA precedent is quite ambiguous on the possession point, and we think that when you will be able to say that it's a practical problem, it's a practical consequence. We think that the BIA's precedent on this point is unclear. But, Justice Breyer, our argument isn't just about the practical consequences. It's also about the best reading of this text. We don't think this text is ambiguous. It talks about violations of laws relating to Federal controlled substances. As you well know, the problem you just mentioned is a problem that we're just having a terrible time with in respect to the violence add-ons. And it stems from the fact that State laws differ one from the other enormously. So we either have that problem, or we have the problem of you have a general statute and which does it apply more to and so forth, or you have the problem of do you look at the individual facts of the case and require them to prove it out again. I don't see how we escape one serious problem or another. I agree, and let me propose that there are difficulties under either approach. Let me tell you why I think this is the best approach here. The first is I think the text signaled that Congress chose our approach here, and the text is different from any other similar provisions. The second is that there's a difference. It's exactly like it. When Congress intended to say, and I can point to at least three provisions, when it wanted to say any controlled substance without reference to 802, it said any controlled substance. And when it wanted to limit it to 802, it defined the controlled substance as being listed in 802. So it knows how to differentiate the two. The textual contrast that we find most revealing here is that there are provisions of the INA that talk about being removable for a crime related to controlled substances. And then you would do the categorical approach just as you were proposing. But let me just mention the practical reason why we think our approach is preferable to Justice Breyer and why we think that Congress chose it, which is that Congress acted against the backdrop of State drug laws like Kansas's, which weren't States just enacting random lists of substances as their controlled substances. These laws are designed, as Congress put it, as an interlocking trellis to closely relate to Federal law. And so Congress wanted to do that. Kagan, I would think that the history works against you in the following way, because the prior statute here was a statute that listed all these Federally controlled substances. And that eventually got to be impractical. There were too many of them. They kept changing. And so Congress went to this approach. But it was clear in the old statute that the only way that you could be held deportable was if you had been convicted of an offense, you know, possession or distribution or whatever, with a Federally controlled substance. And there's no reason to think that in enacting this statute that Congress meant to do something broader than that. There's every reason to think it wanted to do the exact same thing. If you're convicted of controlled substance, of possession of controlled substance, you're deportable. If you're not, if it's only pseudofed, you're not. Your Honor, I don't think that's correct. Congress in the prior versions of the statute did specify particular acts that your conduct had to involve and also specified a narrower list of substances that your conduct had to relate to. But I don't think it's clear that Congress believed that there's nothing in the legislative history or other documents to suggest that Congress believed that relating to language meant involving. Kagan But the question is, when Congress makes a change like that, which we know is a change for a particular reason, because the list of substances was getting out of control, it's very much like yesterday's case. I don't know if you're familiar with that. But Congress makes a change for one reason, suggests or does not make any, any suggestion that this change is supposed to do something else and something much bigger, which is extend this deportability provision to controlled substances that aren't part of the Federal list. There's just no reason to think that Congress did that in making this change. Your Honor, the relating to language, which is very broad language, is within the prior statute and it's within the statute now. We don't think there's an indication that Congress read that statute narrowly in the prior versions. We think the plain meaning of that language is quite broad. Your Honor, let me just mention there is a second reason that we've talked principally about the first one. But the BIA was also entitled to Chevron deference for its separate reasoning pertaining to paraphernalia. The BIA has for many, many years reasoned that there are some crimes that are related to the drug trade in general, not necessarily to any individual substance. And the earliest case on this was a case about the case I'm thinking of is Martinez-Gomez from 1972, which talks about opening a drug, essentially opening a drug den. And they say that's a crime that doesn't necessarily relate just to any individual substance. It bears a relationship to all substances. And then in Martinez-Espinosa more recently, the Court was a federal crime, though. It had to relate to a controlled substance on the Federal list, all drugs on the Federal list. Your Honor, the reasoning of Martinez-Gomez and then the reasoning of Martinez-Espinosa is that these are crimes that don't necessarily have to bear a relationship to a single substance. For instance, drug paraphernalia are tools that can be used with multiple substances. So you might possess, you know, scales and baggies for the purpose of packaging a particular drug on one occasion. But those items can just as easily facilitate those activities with respect to other substances. Ginsburg-Miller But Assaf, I mean, one of the strange things about this case is you have a disjunction. Assaf doesn't count as drug paraphernalia under the Federal law, but it does under the State law. It means any container. And then to take that State law, I mean, suppose we have a conviction for one of those drugs that's not on the Federal list just for possession of that drug. And then we have another conviction where that drug is inside a container, and it's inside a sock, and it's for drug paraphernalia. So in the one case, you would say not removable, if it's just the substance itself. In the other case, because of the sock, it becomes removable? Kagan Your Honor, I agree that I think a strange feature of this case is that it involves an item that's not usually thought of as drug paraphernalia, the classic paraphernalia items, and the ones you see most often prosecuted in Kansas and in other States are things like hypodermic needles and scales and substances that are used to mix with drugs before sale. And I think it's easiest to see in that case why the BIA's reasoning makes sense, which is those items, when they're possessed by somebody in connection, even with a State-controlled drug, are tools. Sotomayor I don't think that's the important point that Justice Ginsburg is making. She's saying under Federal law, this person can't be convicted for that drug that's not a drug on the Federal list, but it can, or the State list, but can be convicted under your theory for possessing the stock and that non-illicit drug in the sock. Kagan For possessing the sock, and I think it's easier to see that in the case of the drug. Sotomayor With that particular unscheduled item. And I think it's easiest to see why the BIA drew this conclusion when you talk about the more classical tools of paraphernalia, which is if somebody possesses scales and distribution baggies and cut in connection with a State-controlled substance, say a synthetic marijuana item that's not Federally controlled at the time, those are tools that could be used in connection with a Federal drug as well. And so the BIA reasoned that there are certain crimes that involve conduct that could facilitate the distribution of one drug just as easily as another. Alito Do we even know that this is a proper conviction under Kansas law, that the Kansas statute actually means what it's been interpreted here to mean? The Petitioner pled guilty to this, I think because he got a break, because he could have been charged with something if, in fact, he had Adderall, which is a Federally controlled substance. He could have been charged with something more serious. So he pled to this misdemeanor. But it's really hard to believe that the Kansas statute actually regards as drug paraphernalia anything that is used at any time to contain a controlled substance. Suppose somebody buys marijuana or some other drug and it's in a plastic bag. So the plastic bag is one violation. A person puts it in a pocket, that's another violation. The pocket is drug paraphernalia. Takes it out of the pocket and puts it in the glove compartment of the car, that's a third violation. The car is equipment that's used to store it. Takes it out of that, puts it in something. It can't really mean this, but we don't have State court interpretations. That's right. And if I could just make two brief points about that. You're right that this was a result of a plea. And as a result, we don't know exactly what Kansas courts would say about this application, which is a very unusual application. But I think that illustrates, Justice Alito, I think the bad consequences of Petitioner's view, which is for Petitioner, even if it was cocaine that was stored in the sock, if he pleads guilty to the paraphernalia offense, the BIA will lack any ability to take enforcement action against him because he's convicted of a paraphernalia crime and the nature of the substance doesn't seem to be part of the crime. Kagan in his sock, he would probably be convicted of possession of cocaine. But he was convicted of paraphernalia because he had four pills of Adderall, which if you go to half the colleges in America, people, you know, and just randomly pick somebody, there would be a decent chance. I think Justice Alito's explanation of this case explains why that's not so. In a plea bargain, prosecutors may be willing to let somebody plead to a drug paraphernalia offense in lieu of a possession offense. And Congress did not want the fact that a State or local prosecutor allows that kind of plea bargain to mean that immigration authorities lack the ability to remove somebody convicted of a crime that relates to a controlled substance. Roberts, I would have thought the opposite inference. If it's not such a big deal that the State is willing to let him top a plea to drug paraphernalia, why should that be the basis for deportation under Federal law? Your Honor, we don't think that Congress viewed drug crimes that way. The way it wrote this removal provision was to say that any crime relating to controlled substances permits the BIA to seek removal. And that's because we think Congress saw drug crimes as quite serious. This Court has recognized that, and Congress has essentially said so in other statutes. So we don't think that's the case. Roberts, I mean, the only – it's because you give relating to such a broad construction that you get the, what I think is the unusual situation that I talked about, which is that the State thinks it's a very minor offense, and yet it can become so significant that the person's deported. But Petitioner's approach is a poor way of reading a crime severity distinction into the statute. We don't think that's what the language allows for minor drug crimes to be set aside as a basis for removal. Why is it a poor way? I mean, the drugs that the Federal Government believes are the most serious are listed in 802. And so if you have to prove under the modified categorical approach that one of those drugs was the intended use, what is so horrible and dissonant about affecting the intent based on the drugs Congress has chosen to list? Your Honor, it's a bad way because serious drug crimes involving Federally controlled substances will not be removable under Petitioner's view. And to give a couple of the reasons why I'm saying that, I think it's a bad way. Sotomayor, I know that you keep saying for many years, but it's not that many years. The BIA has routinely required in distribution and possession cases that you identify the drug. And so they haven't found it impossible in thousands of those cases. It may be more difficult in the drug paraphernalia case because Justice Kagan was right. There are minor offenses. Often States won't bother with pleas that are very lengthy or very complex. But that's a happenstance. That's not – does it call for changing the natural reading of the sentence? No, Your Honor. We're seeking the application of what we think is the best reading of the sentence. Your Honor, I think if you look at the BIA cases that we cite on page 31, they show that Petitioner's approach will prevent the removal of aliens committing crimes involving Federally controlled substances in many cases, because the conviction records aren't going to specify the drug involved. Thank you. Roberts, Thank you, counsel. Mr. Laramore, you have four minutes left. First, the BIA's position is not unclear or in flux. The BIA reaffirmed in a case called Ferrara last year, cited on page 22 of our reply brief, its position, just as Justice Sotomayor said, that the substance has to be identified in possession and sale cases, and it has to be an 802 substance. That's a system that has been in place for decades. It has worked. It has allowed the deportation of drug criminals. It doesn't need to be changed. I'd ask the Court to focus on something that Ms. Kovner raised, which is what Congress intended and knew about when it enacted this version of the statute in 1996 – I'm He said that they knew about the Uniform Controlled Substances Act, and that may have had an influence, although there's nothing that shows in the legislative history that it did. But Congress also knew about the categorical approach when it put the word convicted into the statute at that time. And it knew that the categorical approach and the modified categorical approach would be used when it invoked the word convicted. And that's what we're asking the Court to reaffirm now. The word law that we've talked about so much that's in the sentence, or law and regulation, is necessary in the statute to support what another thing that Congress tried to do in that law, in that statute, which was to clearly invoke States' authority and foreign countries' authority to convict, to allow those convictions to support deportation. And if there's – it was a convenient way to insert that concept into the statute. I would also point out that the underpinnings of the Martinez-Espinoza case, which is the one that they rely on now, this is the so-called drug trade exception, this – which is really just a drug paraphernalia exception, are not nearly as strong as the government suggests. Martinez-Gomez is a case about – I'm not quite sure what you call it, a drug house, a place where drugs are commonly used. But there was no indication in Martinez-Gomez that it necessarily involved any substances that were not Section 802 substances. It's not very strong support for this creation out of really whole cloth a drug trade exception. Thank you. Roberts. Thank you, counsel. The case is submitted.